UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**KEVIN KENNEY,**                   )
                                    )
       **Plaintiff,**        )
                                    )   **Civil Action No.**
       v.                    )   **17-11427-FDS**
                                    )
**U.S. BANK, N.A.,**                )
                                    )
       **Defendant.**        )
_____)

**MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO DISMISS**

**SAYLOR, J.**

    This is a dispute concerning an upcoming mortgage foreclosure. Plaintiff Kevin Kenney has been in default on his mortgage for approximately nine years. U.S. Bank, N.A., the current holder of the note, now seeks to foreclose. Kenney has brought suit against U.S. Bank under state law seeking to enjoin the foreclosure and recover damages. U.S. Bank has moved to dismiss the complaint in its entirety. For the following reasons, the motion to dismiss will be granted in part and denied in part.

**I.    Background**

    **A.    Factual Background**

    The facts are set forth as alleged in the complaint and attached exhibits.

    Kevin Kenney owns a residential property located at 1 Chamberlain Street in Hopkinton, Massachusetts (the "property"). (Compl. ¶ 3). U.S. Bank is the successor-in-interest to various parties who were assigned the note. (*Id.* ¶ 2).

    On April 24, 2006, Kenney applied for his first mortgage refinancing with Mortgage

Lenders Network USA, Inc. According to the complaint, Mortgage Lenders was a "prodigious 'subprime' lender" that has since filed for bankruptcy. (*Id.* ¶¶ 4-5). Mortgage Lenders served as the mortgage broker on the transaction and received a commission for its services. (*Id.* ¶ 6). Before Kenney signed the mortgage documents, Mortgage Lenders representatives allegedly told him that he would receive an "interest only" fixed-rate loan with a 6% interest rate. (*Id.* ¶¶ 7-8). However, the loan included an adjustable rate "balloon" note with an initial rate of 8.69%, capped at 14.69%. (*Id.* ¶ 9).[1] During the 2006 refinancing process, Kenney contends that he was unaware he was signing an adjustable rate mortgage, because the loan documents were "misleading and confusing." (*Id.* ¶¶ 10, 20-21). The principal amount of the refinancing loan was $380,700. (Compl. Ex. F. at 3).

Mortgage Lenders allegedly did not require written verification of Kenney's income during the application process. (Compl. ¶ 11). The complaint alleges that Mortgage Lenders inflated Kenney's income, as his actual resources would not justify the "terms and provisions of the mortgage." (*Id.* ¶¶ 12-13). The complaint further alleges that Mortgage Lenders knew that it was misleading Kenney and other borrowers about their mortgages, allegedly as part of the practice of "mortgage flipping," whereby lenders saddle borrowers with debt to eliminate home equity and increase the likelihood of foreclosure. (*Id.* ¶¶ 16, 18). Mortgage Lenders allegedly encouraged its brokers to falsify loan documents to increase the number of subprime mortgages. (*Id.* ¶ 23).

Kenney went into default on his loan in 2008. (Compl. Ex. A at 1).[2] In October 2014, he

---

[1] Specifically, the rate would be calculated by adding 619 basis points to the six-month London Interbank Offered Rate ("LIBOR"), and then round that sum to the nearest one-eighth of one percentage point. (Compl. Ex. F at 17). The rate would reset every six months on a "Change Date." (*Id.*).

[2] The complaint includes a demand letter pursuant to Mass. Gen. Laws ch. 93A dated May 29, 2015, from Kenney's then-attorney, Raymond Mastroianni. It includes additional factual allegations not included in the text of the complaint itself.

was offered a temporary loan modification through the Home Affordable Modification Program. (Compl. ¶ 24).[3] He would receive a permanent loan modification if he successfully made all payments under a trial period plan ("TPP"). (*Id.*).

Under the terms of the TPP, Kenney was required to make three monthly payments of $2,580.44 on December 1, 2014; January 1, 2015; and February 1, 2015. (Compl. Ex. A at 6). The first two payments were made on time without issue. (*Id.* at 1; Compl. ¶ 25).

A series of severe snowstorms then hit New England in January 2015, causing severe disruptions to the area. (Compl. Ex. A at 2). According to the complaint, the loan servicer, Wells Fargo (doing business as America's Servicing Company) allegedly assured Kenney that "his loan was in forbearance" and that the February 1, 2015 payment due date would be postponed until the weather improved. (*Id.*). The letter does not, however, indicate when the payment was actually going to be due; instead, it alleges that "the bank would wait until the weather improved and commerce returned to normalcy before any payment was required." (*Id.*). Sometime after February 1, 2015—the letter does not say when—Kenney attempted to make the third TPP payment. (*Id.*). However, the payment was declined as late.

Foreclosure proceedings have now commenced. (*Id.* at 2-3). U.S. Bank, which has acquired the note, allegedly has not yet offered a "face-to-face" meeting with Kenney under Massachusetts's right-to-cure law. (Compl. ¶ 27).

**B.** **Procedural Background**

Kenney filed suit in state court on July 14, 2017. The complaint asserted ten counts: violation of Mass. Gen. Laws ch. 93A (Count 1); violation of Mass. Gen. Laws ch. 183C (Count 2); violation of 940 CMR 8.00 *et seq.* (Count 3); violation of the Truth in Lending Act (Count 4);

---

[3] It appears that in 2009, plaintiff received a second loan modification through Wells Fargo. (Docket No. 8, Ex. B). However, the second loan modification is not important to the disposition of this motion.

violation of the Federal Real Estate Settlement Procedures Act (Count 5); unconscionability (Count 6); fraud (Count 7); unjust enrichment (Count 8); estoppel (Count 9); and breach of contract (Count 10).

That same day, Kenney also filed an *ex parte* motion for a temporary restraining order and preliminary injunction to prevent the bank from foreclosing on his property, which was then scheduled for July 18, 2017. The state court issued the TRO and scheduled a preliminary injunction hearing for July 21, 2017, which was later rescheduled for August 8, 2017. Because of the TRO, defendant postponed the foreclosure sale. The bank then removed the action to this Court on August 2, 2017, and filed this motion to dismiss the complaint on August 25, 2017.

During the hearing on the motion to dismiss, plaintiff's counsel voluntarily dismissed Counts 2, 4, and 5 of the complaint and clarified that the remaining counts involved the events surrounding the 2014 loan modification rather than the 2006 origination. The Court also ruled the TRO entered by the state court had expired. Because plaintiff's counsel raised new arguments not previously discussed in his opposition memorandum, the Court gave both parties an opportunity to file supplemental memoranda of law. A hearing on the preliminary injunction has been scheduled for November 29, 2017, and the foreclosure sale is now scheduled to occur on November 30, 2017.

**II.     Legal Standard**

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual

allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III. Analysis

#### A. Count 1 (Mass. Gen. Laws ch. 93A)

Count 1 alleges that defendant engaged in unfair and deceptive actions in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2. "Conduct is unfair or deceptive if it is 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or 'immoral, unethical, oppressive, or unscrupulous." *Cummings v. HPG Int'l Inc.*, 244 F.3d 16, 25 (1st Cir. 2001) (quoting *PMP Assoc. Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)).

Defendant notes that the complaint primarily focuses on alleged wrongdoing in 2006 by Mortgage Lenders, which is not a party to this suit, and makes only a passing reference to the fact that plaintiff "did make every payment during the temporary modification period and complied with all relevant terms and provisions mandated by the bank." (Compl. ¶ 25). However, the complaint also includes (and incorporates by reference in paragraph 33) an attached letter dated May 29, 2015, from plaintiff's then-counsel. The letter alleges that the

5

loan's servicer, Wells Fargo, told plaintiff that due to the snowstorms in January 2015, his loan was in forbearance and that he could postpone making the February 1, 2015 TPP payment, but then refused to accept the delayed payment. (Compl. Ex. A at 2). That allegation of a misleading representation in connection with the loan modification states a claim for violation of Chapter 93A. *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 241-42 (1st Cir. 2013) (vacating dismissal of Chapter 93A claim where the plaintiff's claim "extend[ed] beyond the alleged breaches of the TPP and include[d] defendants' handling of [the] entire case, beginning with the negotiations surrounding [the] forbearance agreement through [plaintiff's] attempts to obtain a permanent loan modification"); *Stagikas v. Saxon Mortg. Servs., Inc.*, 2013 WL 5373275, at *4 (D. Mass. Sept. 24, 2013) (collecting cases for the proposition that "[c]ourts have found that when defendants misrepresented to plaintiffs . . . their eligibility for a permanent loan modification these acts were sufficiently unfair or deceptive to impose [Chapter] 93A liability" (internal quotations omitted)).

Setting forth the factual basis for a claim in an attachment, rather than in the body of the complaint, is hardly a model of proper pleading. It may well violate Rule 8, which requires "a short and plain statement" of any claim for relief, and that any allegations be "simple, concise, and direct." Fed. R. Civ. P. 8(a), (d). And the allegation that the bank gave plaintiff a completely open-ended extension of time to make the payment "until the weather improved," and did so orally, not in writing, is barely plausible. Nonetheless, under the circumstances presented here, the complaint taken as a whole states a Chapter 93A claim. Accordingly, the motion to dismiss will be denied as to Count 1.

  **B.** **Count 3 (Violation of 940 CMR 8.00 *et seq.*)**

Count 3 alleges a violation of 940 CMR 8.00 *et seq.*, which are regulations promulgated

by the Massachusetts Attorney General to police the conduct of mortgage brokers and lenders. While violation of those regulations may serve as a basis for claims of unfair or deceptive conduct under Mass. Gen. Laws ch. 93A, the regulations themselves do not provide a private cause of action. *See Cranmore v. Wells Fargo Bank, N.A.*, 2013 WL 1195275, at *5 n.3 (D. Mass. Mar. 25, 2013). *See also Vicente v. FCDB SNPWL Trust,* 2012 WL 474164, at *2 (D. Mass. Feb. 13, 2012) ("there is no private right of action under [these regulations]") (internal citations omitted). Count 3 will therefore be dismissed.

### C. Count 6 (Unconscionability)

Count 6 alleges that "the actions of the defendant . . . are unconscionable." (Compl. ¶ 43). However, unconscionability "is an affirmative defense [to enforcement of a contract] and not a stand-alone cause of action." *La Casse v. Aurora Loan Servs., LLC*, 2016 WL 4535338, at *7 (D. Mass. Aug. 30, 2016). Accordingly, Count 6 fails to state a claim and will be dismissed.

### D. Count 7 (Fraud)

Count 7 asserts a claim for common-law fraud. To state a claim for fraud under Massachusetts law, the complaint must allege that (1) the defendant made a false representation of a material fact, (2) the defendant knew that the alleged representation was false, (3) the defendant purposefully induced the plaintiff to rely on that representation, (4) the plaintiff relied on that representation as being true, and (5) the plaintiff was damaged by acting on that representation. *See Stolzoff v. Waste Sys. Int'l Inc.*, 58 Mass. App. Ct. 747, 759 (2003). In addition, Fed. R. Civ. P. 9(b) imposes a heightened pleading standard for fraud claims. In order to meet that burden, a complaint must provide "specification of the time, place, and content of an alleged false representation." *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980).

The complaint sets forth a variety of allegedly fraudulent actions committed by Mortgage Lenders. (Compl. ¶¶ 7-23). But even if the acts of Mortgage Lenders were attributable to defendant, those events transpired in 2006; this lawsuit was not filed until July 2017, well after the three-year limitation period for fraud expired. *See Charest v. President & Fellows of Harvard Coll.*, 2016 WL 614368, at *13 (D. Mass. Feb. 16, 2016).

The text of the complaint itself contains no allegations of fraudulent representations by U.S. Bank or its agents. It is true that the Chapter 93A demand letter alleges that Wells Fargo customer service representatives told plaintiff in late January 2015 that "[plaintiff's] loan was in forbearance and the bank would wait until the weather improved . . . before any payment was required," and that he allegedly relied on that statement in believing that he could delay making the February 1, 2015 payment. (Compl. Ex. A at 2). But that alleges, at most, a false statement and detrimental reliance; there is no allegation, in the text of the complaint itself or in the letter, that the bank knew at the time that the statement was false and intended that the plaintiff would rely on it to his detriment. Those allegations are not sufficient to state a claim for fraud. The motion to dismiss will therefore be granted as to Count 7.

### E.      Count 8 (Unjust Enrichment)

Count 8 asserts a claim for unjust enrichment. Massachusetts law defines unjust enrichment as the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005). To succeed on a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon the defendant by the plaintiff, (2) an appreciation or knowledge by the defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value. *Massachusetts Eye & Ear Infirmary v. QLT*

*Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009).

However, unjust enrichment is "an equitable remedy, and 'it is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy in law.'" *Foley v. Yacht Mgmt. Grp.*, 2011 WL 4020835, at *8 (D. Mass. Sept. 9, 2011) (citing *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 324 (D. Mass. 2005)). Here, the damages plaintiff claims on a theory of unjust enrichment are the same damages that he claims on his claim for breach of contract and other legal theories. Those claims would suffice to provide an adequate remedy at law if plaintiff indeed suffered any cognizable injury.

In addition, the complaint does not set forth with any particularity the basis for the unjust enrichment claim. As plaintiff concedes, he has technically been in default on his mortgage for approximately nine years. The complaint does not contend that he made any payments he was not already required to make. Thus, the complaint does not state a claim that defendant was unjustly enriched by any payments made to it by plaintiff. Accordingly, Count 8 will be dismissed.

### F.     Count 9 (Estoppel)

Count 9 asserts a claim of promissory estoppel. Under Massachusetts law, to prove such a claim, a plaintiff must establish that "(1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise." *Loranger Constr. Corp. v. E.F. Hauserman Co.*, 6 Mass. App. Ct. 152, 154 (1978). The plaintiff must also have suffered substantial detriment and his reliance must have been reasonable. *See id.* at 159 n.4; *Rhode Island Hosp. Trust Nat'l Bank v. Varadian*, 419 Mass. 841, 850 (1995).

9

Here, plaintiff contends that defendant's loan servicer promised that he could postpone making the February 1, 2015 payment until the weather improved. (Compl. Ex. A at 2). The May 29, 2015 letter alleges that plaintiff relied on this promise to his detriment. However, promissory estoppel is a theory of recovery under a promise that is not supported by consideration. Here, the complaint states a plausible claim for breach of contract (the TPP) supported by consideration. *See Belyea v. Litton Loan Servicing, LLP*, 2011 WL 2884964, at *9 (D. Mass. July 15, 2011); *Durmic v. J.P. Morgan Chase Bank, N.A.*, 2010 WL 4825632, at *5 (D. Mass. Nov. 24, 2010). The claim for promissory estoppel is thus an alternative theory of recovery. Accordingly, the motion to dismiss will be denied as to Count 9.

### G. Count 10 (Breach of Contract)

Count 10 asserts a claim of breach of contract. In order to assert a claim for breach of contract under Massachusetts law, a complaint must allege "that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage." *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997) (citations omitted). The parties do not appear to dispute that the TPP agreement constituted a contract.[4] However, defendant contends that its performance was excused because plaintiff failed to make the final payment on time.

It is undisputed that plaintiff did not make his final TPP payment by February 1, 2015. However, as discussed earlier, the May 29, 2015 letter contends that defendant's loan servicer represented to plaintiff that he could delay making the final TPP payment without any adverse

---

[4] Courts in this district have held that a TPP "has the appearances of a contract." *See, e.g.*, *Belyea*, 2011 WL 2884964, at *7-9; *In re Bank of America Home Affordable Modification Program (HAMP) Contract Litig.*, 2011 WL 2637222, at *3-4 (D. Mass. July 6, 2011); *Durmic*, 2010 WL 4825632, at *2-4.

consequences.[5] (Compl. Ex. A at 2).  If true, that would constitute a waiver of the condition precedent in the TPP agreement, and defendant's refusal to accept the payment after February 1, 2015, would be a breach.  *See Green v. ExxonMobil Corp.*, 470 F.3d 415, 420 (1st Cir. 2006) ("courts may excuse non-performance of a condition precedent where caused by the other party.") (citing Restatement (Second) of Contracts § 245 (1981)).  Therefore, the motion to dismiss will be denied as to Count 10.

**IV.    Conclusion**

For the foregoing reasons, the motion to dismiss is GRANTED as to Counts 3 (violation of 940 CMR 8.00 *et seq.*), 6 (unconscionability), 7 (fraud), and 8 (unjust enrichment), and otherwise DENIED.

**So Ordered.**

Dated:  November 9, 2017

/s/  F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

---

[5] A loan servicer operates as an agent in serving the interests of the principal (the note owner).  *See R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 187 (1st Cir. 2006) ("Typically, a mortgage servicer acts as the agent of the mortgagee to effect collection of payments on the mortgage loan.").  Accordingly, defendant was bound to honor promises made by its loan servicer.